on unreliable statements made at sentencing and this court itself has said that statements used for sentencing must have some indicia of reliability. His sentence also bears no, there's a disparities, there's a discrepancy between the sentence he received and others who were more culpable. If you look at the 93 count indictment, Mr. Lopez-Salas is named nine times in that indictment whereas Carrillo-Mendez is named some 36 times and Carlos Santos 58 in 58 counts and yet somehow between the investigation which went on for two years in which there were no less than six investigators and 12 affidavits in support of the affidavit for a wiretap and in support of the from a low-level runner considered a chicken brain unable to do math to someone poised to take over Carlos Santos's position within this conspiracy. Counsel, were Santos and Lopez-Salas sentenced by the same judge? I don't recall. I believe, I thought that Justice Whaley had done all of the sentencing but that's my impression. I can't vouch for that but maybe Mr. Smoot can. Mr. Santos received a sentence of a hundred and thirty three months and Mr. Lopez received a sentence of 168. Now it's true that that given that this was he was he was a first-time offender had no criminal history but this was because of the amount of drugs it was a level 35 and the low end of that range is 168 but he had in his plea agreement he it was he could appeal this if the sentence was more than 120 and that's where he thought he would come in at because originally that's what they talked about. But it's not exactly what the plea agreement said. I mean what the plea agreement said is exactly what happened at least as I understand it, right? Right. Okay. He had qualified for a safety valve and he met all of the criteria. Sure but he didn't he opted not to go for it. That's right. That should someone be punished for not doing that. But he wasn't punished for not doing it he just got no credit for not doing it. I think he was punished because the government said things about him which were not based on any evidence and in fact I did attend the sentencing for Mr. Carrillo-Mendez and at that point it was clear that Carlos Santos yes had left Spokane for a period in November but he was only gone for nine days and the special agent Miller who testified then and who also testified in many of these other proceedings said well he yes he came back and he had another business down there he was smuggling illegal aliens into the country and many of them became drug runners and he was skimming from the organization. There's no instance so it can only appear to be somewhat vindictive that when Mr. Lopez-Salas said I can't take this safety valve he has and he said this through an interpreter he has family back in Mexico and there are a lot of reasons why people who accept responsibility which he did he accepted responsibility for what he had done what and we need to look at his relevant conduct in the course of this person and now suddenly he he gets 168 month sentence. What evidence in the record is that he had been elevated to be a phone person? Elevated to be a phone person? Uh-huh. What's the evidence of that? You mean that he had he accepted phone calls? There's no evidence that he ever negotiated a sale or price or did anything but take an order as to the amount. It came out and this was actually more clear in the trial or the sentencing testimony for Mr. Carrillo-Mendez that for a brief period Mr. Lopez-Salas had a telephone that a text message would come in from Christopher Cardon or one of the other street dealers who were dealing significant amounts of drugs in the community would type in a number and he understood. He could read numbers but he spoke no English. This I mean it still doesn't place him in any of the roles of supervision or authority or he couldn't even if they wanted to change him. The thing I just had trouble with the argument is that I mean none of that happened. I mean it's just he didn't get a break because he didn't ask for it. The judge didn't for example find that he was a leader or an organizer. The judge didn't sock him with it. He just did what the plea agreement said which was sentenced at the low end of the guideline range. You can look at the plain facts of this in plain air that the same judge would would say he was the number two or possibly. He said he was an integral part of the network which he was. He specifically said number two or three. Well runners are unnecessary. But he didn't I guess here's my point he could have said the moon is made of green cheese but he didn't up the sentence in any respect on account of that. Well when he enumerated the basis for his belief of regarding Mr. Lopez-Salas role he specifically bought into statements the government that had made for which there was no indicia of reliability i.e. that he was poised to take over Carlos Santos. Then presumably he would have sentenced at the upper end of the guideline range which he didn't do. But they were in a bind because first he's offered them the and the government wants to have it both ways. First they offer him the safety valve and he can't get the safety valve if he is a leader organizer. But then when he doesn't take it they don't use the word leader organized there they just but they elevate him in another way to make his role more serious than that of Carlos Santos. And Carlos Santos identified in 58 counts of the General's I'm sorry I caused you to go over your time and we don't want to cut into co-counsel's argument. Thank you and may it please the court my name is Tracy Stauff I'm here on behalf of Billy Joe Thompson he's one of the third defendants in this and I knew that that was going to happen I'll try and watch my clock. The issue in Mr. Thompson's case is also a sentencing issue but it's completely unrelated and it's whether under a modified categorical approach his prior Washington state conviction for riot constitutes a crime of violence under the guidelines. This is an important issue and I think it's going to start to come up we're seeing it in our office quite a bit more and the reason is because Washington now allows since 2006 a defendant to plead guilty to a crime even when there is no factual basis for that crime in order for the defendant to take advantage of a plea agreement and in Washington the riot conviction is unranked which means under their sentencing guidelines scheme an unranked felony such as this the maximum sentence is one year. So prosecutors are offering up riot to all sorts of other charges defendants are happily taking it because it limits the sentence and we're going to see a lot of riots where there is no factual basis for it. Well let's get to the facts of this case he had a riot conviction and a gun was involved. Correct. So it's hard to think that this isn't a crime that involved physical force against a person of and a crime of violence. Well if you look at it from his statement on plea of guilty in which he says I was with my girlfriend when she hit a guy with a gun and I also participated in the fight so he didn't use the force according to his statement on plea of guilty and we don't know the level of force that was used and under this court's precedent the force used under that provision of crime of violence needs to be violent force. This is essentially misdemeanor level force it is raised to a felony if the actor possessed a deadly weapon. It's the only thing that raises it up to a felony so we've got misdemeanor level force being used which as I explained can be a push it's any offensive or unwanted touching on a person so it could it doesn't have to be violent force and in this case even the statement on plea of guilty says she hits him with a gun well what do we know from that we don't know if it was violent force. How could it not be? Well she didn't shoot him. Well yeah. She could hit him you know without she could just bump him. She could whack him on the head like she was beating my kid over. That's being hit a question. No the gun obviously but it doesn't have to be force and the problem that we're having here is that the modified categorical approach is supposed to be a narrow exception and it's being taken from a narrow exception to a wide exception and the reason being is that we're taking a modified categorical approach to a catch-all provision against a crime that doesn't have a factual basis that supports that. So again if we go back to the judge and we assume that was his he didn't use the force. She did and his participation doesn't amount to aiding and abetting and it doesn't amount to conspiracy. Why doesn't it amount to aiding and abetting? It doesn't amount to aiding and abetting because it doesn't require that he have a specific intent to help her use that force or help her commit that crime and it doesn't amount to a conspiracy because there doesn't have to be any particular plan to commit the crime so it's you know the lowest level it's just participation. That's all it is. It doesn't have to be any conspiracy or any intent. So all he's doing is standing there while she's hitting a guy and it doubles his sentence. Well what does he say? Did he help? He doesn't. All he says is I participated in the fight. I participated. That's all he says. So that's the factual basis for the plea. Well what does participated mean in that context? I don't know your honor but the government has the burden in this case of showing that the facts that he admitted to clearly and unequivocally come within the narrowed version of a crime of violence. So this statement on plea of guilty just doesn't get the government to meet its burden and that's the bottom line on this. Counsel, has this allowing, as I understand it you say, Washington allows a plea of guilty based on no facts. Has anyone lodged a constitutional question on the validity of that approach? According to the Washington Supreme Court they're allowing it and this was a case named State v. Zao. It's a 2006 case and boy when I read it red flags were not any higher than the Washington State Supreme Court. But what they're basically saying is you can plead guilty even though there's not a factual basis and riot is a very popular crime to plead guilty to. But it requires essentially three people, the use of force and the use of a deadly weapon. And in a lot of cases like this those elements just aren't there. So I think that that's going to be a problem when the government attempts to apply a modified categorical approach under the catch-all phrase to a crime where there's no evidence. So I'll leave the rest of my... All right, thank you. Okay, Mr. Ryan. Thank you, Your Honor. May it please the court. I represent Jose Luis Carrillo Mendez. Mr. Mendez was sentenced to 186 months in prison after pleading guilty before Judge Whaley of the Eastern District of Washington to one count of conspiracy. And this case involved approximately 20 different defendants and it's divided up between defendants who were customers and defendants who were part of a group that was selling methamphetamine and cocaine. After my client pled guilty, the parties having prepared the plea agreement, which left open an argument regarding leader-organizer, had a series of hearings. And trial counsel at that time presented a couple of witnesses. The prosecution had some witnesses also. And at some point Judge Whaley decided that my client had been a leader-organizer and... Is that clearly erroneous? I think it is because the facts don't support what Judge Whaley found. And I'll get into that. I tried to take a look at all the facts in the case and what they showed with particularity regarding my client. And I made a list. First of all, the evidence showed that all of the defendants that were part of the distribution, not the customers, were working toward a common goal, which was to distribute cocaine and methamphetamine in the Eastern District of Washington. Some of the jobs were interchangeable. One day somebody would have a cell phone. The next day somebody else would have the same cell phone. And then cell phones were thrown out and others obtained. Different people would receive calls. The evidence in this case showed that my client, Mr. Carrillo Mendez, was on the phone receiving orders and then those orders would be delivered or distributed to a particular customer. Now could he negotiate quantity and price? Well, my reading of the transcript, not having been involved in the plea in all the hearings but being appointed later on, my reading of the entire transcript that I have shows that you could read that either way. He could have been involved in negotiating the price and how it was going to get to where it had to go. You could also say, well gee, we really don't know that. You know, did somebody tell him to negotiate that price? Did somebody tell him how to get a hold of Mr. A. and get it to the taco time on North 30th Street? But it wouldn't be clearly erroneous for the district court to find that. I don't think there's any evidence to show that my client was involved in negotiating the price. I don't think there's any solid evidence. There's some scintilla of evidence that there was discussion about a price. But we don't know who was pulling the strings. The government never brought that out. Well, do you dispute the fact that he instructed at least Lopez Morales and another co-defendant and said to, I guess a third, it would have been Jernigan, that you work for me on the quantity of cocaine and meth to transport to Washington State, that he solved delivery problems for Lopez Salas with, that he had with Jernigan and Davis, and that he was the contact guy for Mexico? I do. I'll tell you why. If you look in the government's brief. I'm not looking in the brief. I'm looking in the record. Well, the government's brief cites the record on and you get later on in the brief and the quote is, you work for me. So it's a question of one word. You take the one word out for and put in the word with, then you don't have leader-organizer. So I think that's the crux of the whole case and you've hit upon it. The evidence doesn't show that my client was a leader-organizer. It shows that he was working with all these other... You dispute that he was selling in Washington. I dispute that. And you dispute that there's evidence that he was, in effect, a problem solver. And you dispute the fact that he was the contact guy for Mexico. There is evidence that he made at least one and probably up to five phone calls to somebody named Robert or Roberto Lopez in Mexico. The nature of those calls and why he called is in dispute. The fact that he called to Mexico does not mean that he's a leader-organizer. We don't know how many other people dialed the same number in Mexico to talk to Roberto Lopez. So when the government calls its detective who started the case, worked the case, was there when the transcripts were typed up and then went into court and testifies as an expert that, yes, Mr. Carrillo Lopez or Carrillo Mendez is a leader-organizer, I don't agree with that. He's certainly intimately involved in the case, so he wants to set up some sort of an organization. But in my opinion, based upon the record that I've read, the trial court judge was clearly erroneous when he decided that my client was a leader-organizer because the way I look at it, this is more of a distribution line, worker bees. The call comes in, say, for example, to one of the Internet companies. The call comes in, the product is ordered, it goes down the line, everybody puts their stamp on it, and then somebody's got to deliver it. And they're all doing the same thing. They're interchangeable. Thank you. Okay. Thank you. Mr. Smoot. Good morning, Your Honor. May it please the Court, Russ Smoot on behalf of the United States. Your Honor, as obviously we're here on three cases that were decided in the middle of a, well, not in the middle, decided separately in three cases. The first one was a case of methamphetamine and cocaine distribution conspiracy. The cases were decided by the same judge, Judge Whaley. And if I recall, these three sentencings came towards the end of the case. If not mistaken, only one defendant was tried after these sentencings, and one now and a number of sentencings. Rather, I think, Your Honor, than just summarize what the United States has already advanced in its briefs on these subjects, I could be directed by the Court if there were particular questions that the Court had, or maybe address some of the questions that the Court had of defense counsel. Well, can you explain for us why Santos got a smaller sentence than Lopez Salas? Yes, Your Honor. Both defendants had the same criminal history and same guideline range. Both were offered the opportunity to take advantage of the safety valve. Mr. Santos did. Mr. Lopez Salas didn't. There lies the difference, the range. The low end, the government recommended the low end on both defendants. The low end just happened to be 135 for Mr. Santos, 168 for Mr. Lopez Salas. Anything else? On Mr. Carrillo-Mendez, summarize the evidence of his leader organizer role. Thank you, Your Honor. I would note that the evidence that was presented at the hearing, let me back up just very briefly and say that this case was a wiretap case that involved interceptions over six phones, most of which were used by Mr. Carrillo-Mendez, one of which was used by both Mr. Santos and Mr. Carrillo-Mendez to essentially conduct the daily distribution activities. In one aspect, both of those defendants were the same while they engaged in that role of taking the incoming calls from persons such as Mr. Thompson and others and directing persons such as Mr. Lopez Salas to deliver whatever was ordered, methamphetamine or cocaine, to whoever had ordered it. The difference in the investigation was borne out, however, in some of the other telephone lines that Mr. Carrillo-Mendez was using. Mr. Carrillo-Mendez used a particular telephone not to engage in these daily transaction activities but to actually coordinate the supply of controlled substances from delivery of that from California up into the Eastern District of California. Mr. Lopez and Mr. Alvarez Tejada to specifically bring specific amounts of methamphetamine, how much to try to fit into the car and how much to bring up. One of the calls specifically states, advises, I believe, one of them, Your Honor, to make sure that he brings all the methamphetamine and then fit whatever Mr. Carrillo-Mendez also advised Mr. Santos when Mr. Santos was going to California as to how much money of the organization's funds that he could take, presumably for personal use. I believe that the call said something to the effect of take 200 or two for yourself. Mr. Carrillo-Mendez also assisted on the phone when there seemed to be problems during the delivery with Mr. Lopez-Salas when he would deliver whatever product was ordered to certain individuals and the money didn't seem to match the delivery. Mr. Lopez-Salas would then call Mr. Carrillo-Mendez and say, we have a problem here. Mr. Carrillo-Mendez would then say to the effect of let me talk to whoever the customer or lower level distributor was and then resolve the conflict. Most significantly, I think, and the court hit on this, was that during one of the calls to one of the local lower level distributors, being Varcel and Michael Jarnaghan, Mr. Jarnaghan had obtained product from somebody else named Manuel. Well, there were some problems with that and ultimately within the phone call, while Mr. Jarnaghan was complaining about the product and losing money from what he got from Manuel, whom he seemed to think was with Mr. Carrillo-Mendez, Mr. Carrillo-Mendez says, well, you work for me. Now, the court brought that up and I just wanted to point out that there was a discrepancy or a difference between the plea agreement as stated and the actual transcript. And I would note that in the government's brief on page 42 where it discusses what happened in the plea hearing, the government specifically advised the court that the language of the plea agreement was specifically chosen to allow both parties to advance the positions they had at sentencing. The government being that Mr. Carrillo-Mendez was the leader organizer of the lower level and the plea was not a leader organizer and thus should be eligible for the safety valve like the other defendants. The plea agreement does not quote, you work with me, but specifically does say, you work with me. In fact, I guess I'm quoting the plea agreement, but those words are not in quotes, whereas the transcript, which was admitted as Exhibit 13, specifically was translated the term, you work for me. I think that for the most part, probably more than summarizes the government's position on Mr. Carrillo-Mendez's leadership. In respect to Thompson, how do you support the finding that this riot was a crime of violence? Your Honor, the government's position is that that's supported by unambiguous documents. It is, in fact, the government's position that the modified categorical approach would be used because as written in the Washington statute, a person could commit riot by the very words of the statute against property. Going to the modified categorical approach and using the documents that have been, I guess, defined over time, we look at the charging document in this case. The charging document specifically alleges facts. This is the amended information that Mr. Thompson was armed with a club, I believe, a deadly weapon, and attempted to use or threatened to use force against another person, that being a Kevin Brown, as alleged in the information. Now, it's noteworthy that the information also charges, that was count two, charges a fourth degree assault as well as a third, the third count is possession of a firearm, I believe. The statement on guilty plea, which is typically done in a closed state, check the box and fill in the blank type of document, indicates that the defendant is pleading to counts one, two, and three, count two being the felony riot as charged. And the judgment in the case also notes that the conviction is for, well, three of them, but specifically riot as charged, felony riot. If the court, the district court, did not have all three of those documents and had maybe the judgment, for example, that is not as clear as the amended information of the facts that are relevant to whether or not it's a crime of violence, then the question becomes more ambiguous, of course. If it just says it would necessarily be thrown out. If the court simply had maybe the statement that the defendant made that said, well, I was with my girlfriend, I participated in a fight, or whatever the specific words, and she had a firearm, then there may again be some ambiguity into it. But the bottom line, from the government's perspective, Your Honor, is that in the presence of some ambiguity, you don't throw out what is crystal clear. In this case, what's crystal clear is that this is how the defendant was charged, felony riot by the amended information, the defendant admitted to pleading to the amended information, the judgment references that the defendant has pledged to the amended information, and the defendant's statement, for the most part, encompasses three crimes in a very short statement. I think that is my answer, Your Honor. Thank you. If there are any further questions from the court? I don't think so. Thank you, Mr. Smoot. Ms. Reynolds. Okay, we'll go. I see this skeptical use of the safety valve when it comes to the fact that this was offered to Carlos Santos when he was in a position of authority and supervising, that he had all the powers of somebody who could organize and supervise, and yet he's offered the safety valve. I know why they wanted it, everybody can see it, they were trying to get to Roberto Lopez. I also would like to point out that the other runners who were identified in the indictment all received sentences of zero, which also underscores the disparity of sentences between Mr. Lopez-Salas and the others. It's a little bit like pre-crime in the Spielberg film minority report that we can hold people accountable for the crimes that they committed, and I think that's a little bit of an understatement, but it's a little bit of an understatement. Thank you. Ms. Stump. Thank you, Your Honors. According to the state riot charge, the state can charge all sorts of things, but that's not important. Under the modified categorical approach, what's important is what is proven or what is admitted. The government, under the modified categorical approach, has the burden of proving clearly and unequivocally that this crime qualifies. The government admits there's ambiguity, hence the government does not meet its burden. Thank you. Anything further? All right. Thank you, counsel, all of you. The matter just argued will be submitted.
judges: Fletcher, Rymer, Beam